UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OPERATING ENGINEERS HEALTH AND
WELFARE TRUST FUND FOR
NORTHERN CALIFORNIA, et al.,

Plaintiffs,

v.

CEM BUILDERS, INC., et al.,

Defendants.

Case No.17-cv-03524-EDL

**REPORT AND RECOMMENDATION
TO GRANT PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT; ORDER
REASSIGNING CASE**

Re: Dkt. No. 25

Before the Court is Plaintiffs'[1] motion for default judgment against Defendant CEM Builders, Inc. d/b/a Tucker Engineering and Tucker Engineering, Inc. (collectively, "Defendants"). Defendants have neither appeared nor opposed the motion. For the following reasons, the Court recommends that Plaintiffs' motion be GRANTED and Plaintiffs be awarded $888,042.80 in damages and $65,979.71 in attorneys' fees and costs. The case is hereby reassigned to a District Judge.

I.      **BACKGROUND**

Plaintiffs' operative complaint alleges as follows. Plaintiffs the Operating Engineers' Health and Welfare Trust Fund for Northern California (which includes the Addiction Recovery

---

[1] Plaintiffs are: (i) the Operating Engineers' Health and Welfare Trust Fund for Northern California (which includes the Addiction Recovery Program, Inc.); (ii) Pension Trust Fund for Operating Engineers (which includes the Pension Plan for the Pension Trust Fund for Operating Engineers, the Rehabilitation Plan, and the Operating Engineers Annuity Plan); (iii) Pensioned Operating Engineers' Health and Welfare Trust Fund; (iv) Operating Engineers and Participating Employers Pre-apprentice, Apprentice, and Journeymen Affirmative Action Training Fund; (v) the Operating Engineers Local Union No. 3 Vacation, Holiday and Sick Pay Trust Fund; (vi) Heavy and Highway Committee; (vii) Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO; and (vi) Russell E. Burns and James E. Murray as Co-Chairmen of the Joint Boards of Trusts of the funds listed above in (i) through (v). See Am. Compl., ¶¶ 1-3.

United States District Court
Northern District of California

Program, Inc.) ("Health Fund"), the Pension Trust Fund for Operating Engineers (which includes the Pension Plan for the Pension Trust Fund for Operating Engineers, the Rehabilitation Plan, and the Operating Engineers Annuity Plan) ("Pension Fund"), the Pensioned Operating Engineers' Health and Welfare Trust Fund ("Pensioned Health Fund"), the Operating Engineers and Participating Employers Pre-apprentice, Apprentice, and Journeymen Affirmative Action Training Fund ("Affirmative Action Training Fund"), and the Operating Engineers Local Union No. 3 Vacation, Holiday and Sick Pay Trust Fund ("Vacation Fund") are employee benefit plans as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3) (collectively, the "Trust Funds"). Am. Compl., ¶ 1. Plaintiffs Russell E. Burns and James E. Murray are Co-Chairmen of the Joint Boards of Trustees of the Health Fund, Pension Fund, Pensioned Health Fund, and Affirmative Action Training Fund, as well as the Co-Chairman of the Joint Boards of Trustees of the Vacation Fund. Am. Compl., ¶ 1. As Co-Chairman of the Joint Boards of Trustees of the Funds, they have authority to act on behalf of all Trustees. Am. Compl., ¶ 1. Collectively, the Trust Funds and Plaintiffs Burns and Murray will be referred to as the "ERISA Plaintiffs." Plaintiff the Heavy and Highway Committee is a trust established under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(9). Am. Compl., ¶ 2. Plaintiff Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union") is a labor organization as defined in Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5). Am. Compl., ¶ 3.

Defendants are CEM Builders, Inc. d/b/a as Tucker Engineering ("CEM Builders") and Tucker Engineering, Inc., both of which are California corporations, and are employers under ERISA § 3(5), 29 U.S.C. § 1002(5), and NLRA § 2(2), 29 U.S.C. § 152(2). Am. Compl., ¶ 4.

The Union and Defendant CEM Builders, by and through its representative the United Contractors ("UCON"), entered into the Master Agreement for Northern California between UCON, Associated General Contractors of California, Inc., Industrial Contractors, UMIC, Inc., Northern Alliance of Engineering Contractors, and the Union (the "Master Agreement"). Am. Compl., ¶ 11. Defendant CEM Builders was previously bound to the Independent Northern California Construction Agreement (the "Independent Agreement") with the Union, which

incorporates the Master Agreement between the Union and the Associated General Contractors of California, Inc. (the "AGC Master Agreement").  Am. Compl., ¶ 11.  The Master Agreement, Independent Agreement, and AGC Master Agreement will be referred to collectively as the "Bargaining Agreements."  The ERISA Plaintiffs are third party beneficiaries of the Bargaining Agreements.  Am. Compl., ¶ 11.  Defendant Tucker Engineering, Inc. is bound by the terms of the Bargaining Agreements, and CEM Builders and Tucker Engineering, Inc. constitute a single employer.  Am. Compl., ¶ 12.

The Bargaining Agreements require employer contributions to the Trust Funds, to the Union for union dues, and to the plans as more fully described in the Bargaining Agreements. Am. Compl., ¶ 11.  Those plans were the Contract Administration Fund, Job Placement Center and Market Area Committee Administration Market Preservation Fund, Operating Engineers Industry Stabilization Trust Fund, and Business Development Trust Fund (including the California Alliance for Jobs) (collectively, the "Bargained Plans").  Am. Compl., ¶ 13.  The Trust Funds' Board of Trustees is assigned under the Bargaining Agreements to receive and administer monies due to these Bargained Plans.  Am. Compl., ¶ 13.

Pursuant to the Bargaining Agreements, and the Trust Agreements incorporated therein, Defendants are required to regularly pay to ERISA Plaintiffs, the Bargained Plans, and the Union, certain sums of money that are determined by the hours worked by Defendants' employees.  Am. Compl., ¶ 14.  Contributions are due on the fifteenth day of the month following the month during which hours were worked, and are considered delinquent if not received by the twenty-fifth day of that month.  Am. Compl., ¶ 14.  Pursuant to the Bargaining Agreements and Trust Agreements, Defendants are also required to pay liquidated damages in the amount of ten percent for each delinquent contribution, but in the amount of twenty percent for each delinquent contribution which is the subject of litigation.  Am. Compl., ¶ 14.  The Bargaining and Trust Agreements also provide that interest accrues on delinquent contributions at the rates reasonably set by the Trustees from the date they become delinquent, which is the twenty-sixth day of the month in which payment was due, until paid in full.  Am. Compl., ¶ 14.

The Bargaining Agreements and Trust Agreements further require Defendants to maintain

3

time records or time cards, and to permit an authorized Trust Fund representative to examine those records as necessary to determine if Defendants have made full payment of all sums owed to the ERISA Plaintiffs. Am. Compl., ¶ 15. If such an audit reveals that Defendants have failed to provide full and prompt payment of all sums due, then Defendants must reimburse Plaintiffs for the amount due, including audit fees. Am. Compl., ¶ 15.

Plaintiffs conducted an audit of Defendants' payroll for the period of January 1, 2015 through January 31, 2016, and found that Defendants failed to pay all amounts due to Plaintiffs. Am. Compl., ¶ 16. Defendants have also failed to pay contributions for work performed by their employees from January 2017 through August 2017. Am. Compl., ¶ 17. As a result, liquidated damages and interest have been incurred for the unpaid contributions for that period, and for late-paid contributions for the months of August 2013, May 2014, August 2014, October 2014, November 2014, January 2015, February 2015, April 2015 through March 2016, May 2016 through July 2016, and December 2016. Am. Compl., ¶ 17. The Amended Complaint also sought to recover any and all other contributions, and all liquidated damages and interest on any delinquent contributions found due through the time of judgment, as well as attorneys' fees and costs and audit costs. Am. Compl. ¶ 15.

Before filing this lawsuit, Plaintiffs undertook numerous efforts to obtain cooperation and payment of the delinquent contributions from Defendants. Tucker Engineering previously entered into a payment plan with the Trust Funds' Collection Office, but failed to comply with the terms of the plan. Stafford Decl., ¶ 5. After working with the Trust Funds' Administrator to determine the contribution amounts owed after application of prior installment payments, Plaintiffs' counsel sent a letter to Defendants dated June 2, 2017 about the unpaid contributions and liquidated damages and interest owed on late-paid contributions, as well as the underpayments found due on the audit. Id. Through this communication, Plaintiffs' counsel gave the employer the opportunity to submit payment and/or request a payment plan to resolve the dispute. Id. In response to the letter, a representative of Tucker Engineering contacted Plaintiffs' counsel and requested a meeting to discuss the amounts found due on the audit. Stafford Decl., ¶ 6. The representative advised that Tucker Engineering would need a payment plan for all amounts due, and would be

4

ready to sign the payment plan once the company understood what was found due on the audit. Id. Plaintiffs' counsel advised the representative that they would schedule a meeting, but, in the meantime, a partial payment would be required because of the large amount that was due. Id. Tucker Engineering made the payment on June 12, 2017. Id.

Plaintiffs' counsel met with representatives of Tucker Engineering on June 28, 2017. Stafford Decl., ¶ 8. At this meeting, Tucker Engineering provided an explanation for its difficulty meeting the contribution requirements and promised to work with the Trust Funds to properly report contributions going forward, stay current on its contributions, and make payments toward the amount owed. Id. Tucker Engineering also advised that they were conducting their own audit to substantiate the findings of the Trust Funds' audit. Id. However, Tucker Engineering did not make the promised contribution payments. Stafford Decl., ¶ 9. In response, Plaintiffs' counsel contacted Tucker Engineering again requesting payment and advised that Plaintiffs would need to use an alternative strategy to collect the contributions if they remained delinquent on their obligations. Id. On August 8, 2017, Tucker Engineering sent a $50,000 payment to the Trust Funds, but otherwise failed to pay their monthly contributions. Id.

Plaintiffs' counsel continued to work with Tucker Engineering in an attempt to resolve the delinquent contributions. At one point, Tucker Engineering stated that they were willing to enter into a payment plan to satisfy the amount then due (about $1.2 million). Stafford Decl., ¶ 10. Plaintiffs' counsel prepared the Trust Funds' standard form payment plan and provided it to CEO of Defendants, but he ultimately did not agree to the terms of the payment plan as provided. Id.

Due to the significant amount of contributions owed to the Trust Funds, the refusal to agree to a payment plan, and the inability to remain current on contribution payments, Plaintiffs' counsel requested a list of Tucker Engineering's projects for the past two months so that the Trust Funds could collect contributions directly from the general contractors. Stafford Decl., ¶ 11. Using this information, Plaintiffs recorded mechanics' liens on thirteen private projects and issued stop payment notices on two public projects. Stafford Decl., ¶ 12. These efforts resulted in significant recoveries by the Trust Funds. Id. As a result of these collection efforts, Tucker Engineering started working with Plaintiffs to assist in the collection of the amounts owed from

United States District Court
Northern District of California

outside sources. Stafford Decl., ¶ 13. Subsequently, Plaintiffs filed their Amended Complaint. Stafford Decl., ¶ 14.

## II.    PROCEDURAL HISTORY

On June 19, 2017, Plaintiffs filed this action for contributions under ERISA § 515, 29 U.S.C. § 1145, and for breach of a bargaining agreement under LMRA § 301(a), 29 U.S.C. § 185(a). Dkt. No. 1. On September 24, 2017, CEM Builders waived service. Dkt. No. 9.

On September 25, 2017, Plaintiffs filed a First Amended Complaint that also alleged claims for contributions under ERISA § 515, 29 U.S.C. § 1145, and for breach of a bargaining agreement under LMRA § 301(a), 29 U.S.C. § 185(a). Dkt. No. 14. On October 3, 2017 and October 4, 2017, Plaintiffs served the First Amended Complaint and the amended summons on Defendant Tucker Engineering, Inc. and CEM Builders, respectively. Dkt. No. 18.

On October 31, 2017, Plaintiffs moved the clerk to enter default as to CEM Builders and Tucker Engineering, Inc. Dkt. No. 20. The Clerk entered default as to both Defendants on November 1, 2017. Dkt. No. 21. Plaintiffs served a copy of the notice of entry of default on CEM Builders and Tucker Engineering, Inc. via First Class mail on November 1, 2017. Dkt. No. 22. Plaintiffs filed a motion for default judgment against CEM Builders and Tucker Engineering, Inc. on November 30, 2017. Dkt. No. 25. The docket does not contain proof of service of this motion on Defendants. Defendants did not respond to the motion for default judgment.

The Court determined that a hearing was not necessary, and directed Plaintiffs to file a supplemental brief addressing four questions the Court had about the content of the motion. Dkt. No. 33. Plaintiffs filed their supplemental brief on January 12, 2018. Dkt. No. 38.

## III.    LEGAL STANDARD

After entry of a default by the clerk, a court may grant a default judgment. See Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). As a preliminary matter, the court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). In addition, "the Court must assess the adequacy of the service of process on the party against whom default judgment is

United States District Court
Northern District of California

6

requested." Disney Enterprises, Inc. v. Vuong Tran, No. 12-5030 SC, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the above factors, the Court takes all factual allegations in Plaintiff's complaint as true, except for those relating to damages. See TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV.    DISCUSSION

### A.    Jurisdiction

The Court must first determine that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. See In re Tuli, 172 F.3d at 712. Here, Plaintiffs allege two claims: (a) the first under ERISA to collect unpaid contributions to employee benefits plans, see 29 U.S.C. §§ 1132; and (b) the second to enforce a collective bargaining agreement under 29 U.S.C. § 185. The court has subject matter jurisdiction over these federal claims. See 28 U.S.C. § 1331(a). Defendants engaged in business activities in the Northern District of California that are the subject of this lawsuit and was served in California. Dkt. Nos. 14, 18. Accordingly, the court has personal jurisdiction. See, e.g., S.E.C. v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007); Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986).

### B.    Procedural Requirements

Before the Court may consider whether to enter default judgment, it must be satisfied that the procedural prerequisites, including adequate service of process, have been met. See, e.g., PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Further, a court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1).

Here, Plaintiffs served Defendants with the amended summons and Amended Complaint

on October 3 and 4, 2017, by personally delivering the documents to the agent for service of process. Dkt. No. 18. This service appears to comply with Rule 4(h), which allows service on a corporation by delivering a copy of the summons and of the complaint to an officer or managing agent. Fed. R. Civ. P. 4(h)(1)(B). Plaintiffs served a copy of the Clerk's entry of default, but it appears that Plaintiffs did not serve Defendants with the request for entry of default, or with the motion for default judgment. As Defendants have not appeared, such service was not required. See, e.g., Nautilus, Inc. v. Hempel, 2013 WL 12133877, at *7 (C.D. Cal. June 20, 2013) ("Because Defendant never appeared, Plaintiff was not required to serve Defendant with its Motion for Default Judgment."). Defendants are corporations, so they are not unrepresented minors, incompetent persons, or persons in military service. Accordingly, Plaintiff has satisfied the procedural requirements for entry of default judgment against Defendants.

### C.   Eitel Factors

#### 1.   Prejudice to Plaintiffs

The first Eitel factor considers whether Plaintiffs will suffer prejudice if default judgment is not entered. Plaintiffs will likely be without other recourse for recovery if its motion for default judgment is not granted. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor weighs in favor of default judgment.

#### 2.   Merits and Sufficiency of the Complaint

The second and third Eitel factors pertain to the merits of Plaintiffs' claims and the sufficiency of Plaintiffs' complaint, i.e., whether Plaintiffs have stated a claim on which it may recover. Id. at 1175. Plaintiffs bring claims for delinquent contributions under ERISA, 29 U.S.C. Section 1145, and breach of collective bargaining agreement under the LMRA, 29 U.S.C. Section 185(a). The ERISA statute provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such a plan or such agreement.

29 U.S.C. § 1145.

Section 1145 creates a cause of action against employers who do not make timely

8

contributions that are required under a collective bargaining agreement.  See Trustees of the Screen Actors Guild–Producers Pension & Health Plans v. NYCA, Inc., 572 F.3d 771, 774-76 (9th Cir. 2009); Board of Trustees v. RBS Washington Blvd. LLC, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010).  Plaintiffs here must prove the following:  (i) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (ii) the collective bargaining agreement obligated Defendant to make contributions; and (iii) Defendant did not make the required contributions.  29 U.S.C. § 1145; Bd. of Trustees of the Sheet Metal Workers Health Care Plan of Northern California v. Gervasio Envtl. Sys., 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).  Plaintiffs' complaint contains sufficient facts establishing the elements of the claim:  the trusts are multiemployer benefit plans within the meeting of ERISA; the collective bargaining agreement required Defendants to make contributions to the plans; and Defendants did not make payments.

The LMRA permits Plaintiffs to sue for breaches of a collective bargaining agreement. Federal courts apply federal common law principles to determine the enforceability of contract provisions like liquidated damages provisions.  See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 216 (9th Cir. 1989).  Plaintiffs' complaint sufficiently alleges a contractual obligation to make contributions and a breach of that obligation.  Accordingly, Plaintiffs meet prongs two and three of the Eitel test.

### 3.   Amount of Money at Stake

The fourth Eitel factor pertains to "the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176.  A large amount of claimed damages weighs against an entry of default judgment.  Eitel, 782 F.2d at 1472.  Plaintiffs have demonstrated entitlement to judgment in the amount of $954,022.51.  While is not an insubstantial amount of money, this amount is appropriate as it is supported by the evidence and required by both the collective bargaining agreement and 29 U.S.C. Sections 1132 & 1145.  See Northwest Administrators, Inc. v. Albertsons, Inc., 104 F.3d 253, 257–58 (9th Cir.1996).  This factor does not disfavor entry of default judgment in this case.

### 4.   Likelihood of Dispute over Material Facts

The fifth Eitel factor involves the likelihood of a dispute regarding the material facts.

9

United States District Court
Northern District of California

Here, the parties are unlikely to dispute the material facts of the case. "The issues are straightforward: did Defendant fail to make timely contributions required by the agreement, and what are the liquidated damages. Given that the issues are easily ascertainable, the possibility for substantial fact disputes seems unlikely." Bd. of Trustees of N. California Sheet Metal v. Efficient Energy Concepts, Inc., 2011 WL 7062493, at *3 (N.D. Cal. Dec. 22, 2011), report and recommendation adopted sub nom. Bd. of Trustees of N. California Sheet Metal Workers Health Care Plan v. Efficient Energy Concepts, Inc., 2012 WL 159951 (N.D. Cal. Jan. 17, 2012). This factor weighs in favor of default judgment.

### 5. Excusable Neglect

The sixth Eitel factor considers whether the defendant's default resulted from excusable neglect. Eitel, 782 F.2d at 1472. "Where a defendant '[was] properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion,' this factor favors entry of default judgment." Pearson v. Nationstar Mortgage, LLC, 2016 WL 5496268, at *6 (C.D. Cal. Sept. 26, 2016). Similarly, excusable neglect is unlikely when a plaintiff makes numerous attempts to contact the defendant to resolve the matter. See PepsiCo, Inc., 238 F. Supp. 2d at 1177.

Here, Defendants were properly served with the Amended Complaint and the amended summons. Dkt. 18. Defendants were served with the notice of entry of default and Plaintiffs made demands on Defendants to pay the amount owed before and after Plaintiffs filed suit, although they were not served with the motion for default judgment. Defendants had adequate knowledge of the allegations and opportunity to challenge them. Accordingly, this factor does not disfavor default judgment.

### 6. Policy Favoring Decision on the Merits

Although courts prefer to issue judgments on the merits, "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Termination of a case before hearing the merits is allowed when a defendant fails to defend an action. Id.

Taken together, the Eitel factors support an entry of default judgment.

**D.    Recovery**

**1.    Damages**

Plaintiffs seek several categories of damages: (1) unpaid contributions, liquidated damages, and interest for the months of September and October 2017; (2) liquidated damages and interest for the months of August 2013, May 2014, August 2014, October and November 2014, January and February 2015, April 2015 through March 2016, May 2016 through July 2016, and December 2016 through August 2017; and (3) unpaid contributions, liquidated damages, and interest for January 2015 through August 2016, as well as costs associated with the audit that uncovered these unpaid contributions.[2] ERISA authorizes Plaintiffs to recover unpaid contributions under Section 1132(g)(2)(A), interest under Section 1132(g)(2)(B), and the greater of interest or liquidated damages under Section 1132(g)(2)(C).

**a.    Unpaid Contributions for 9/17-10/17 ($271,546.29)**

The Bargaining Agreements require Defendants to make contributions to the Trust Funds based on the hours worked by their employees.  See Brown Decl., Ex. B, Sec. 12.01-12.12; Ex. D., Sec. 12.01-12.12.; Ex. E, Sec. 12.01-12.12.  If contributions are delinquent, the Bargaining Agreements provide that the employer is required to pay liquidated damages and interest on the delinquent contributions.  Id. Ex. B, Sec. 12.01.02; Ex. D, Sec. 12.01.02; Ex. E, Sec. 12.01.02; Ex. F at 2.  Prior to litigation, liquidated damages are calculated at ten percent.  Id. Ex. B, 12.13.01-12.13.02; Ex. D, Sec. 12.13.01-12.13.02; Ex. E, Sec. 12.13.01-12.13.02; Ex. F at 2.  Once a lawsuit has been filed, liquidated damages are calculated at twenty percent.  Id.  Interest also accrues on delinquent contributions at a rate of ten percent per annum calculated from the day contributions are considered delinquent until paid.  Id.

ERISA authorizes Plaintiffs to recover unpaid contributions under Section 1132(g)(2)(A),

---

[2] Some of the damages sought were incurred after the filing of this lawsuit, but "[c]ourts in the Ninth Circuit have made a limited exception [to the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA."  Bay Area Painters v. Alta Specialty, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008) (emphasis in original).  See also Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston, 2013 WL 2181532, at *4 (N.D. Cal. May 20, 2013); Roofers Local Union No. 81 v. Wedge Roofing, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992).

United States District Court
Northern District of California

interest under Section 1132(g)(2)(B), and the greater of interest or liquidated damages under Section 1132(g)(2)(C). In their original motion, Plaintiffs contend that they are owed $244,493.62 in unpaid contributions, as well as $26,875.72 in liquidated damages and $1,252.86 in interest for September and October 2017.

The original calculations for September 2017, particularly with respect to the amount of unpaid contributions and interest due, did not add up when the Court reviewed these figures. As a result, the Court asked Plaintiffs to submit supplemental briefing about the unpaid contributions for that month, among other elements of their damages request as discussed further below. In their supplemental brief, Plaintiffs explained that Defendants reported $131,191.01 in contributions due for September 2017. Of that amount, Plaintiffs were able to recover $118,796.29 as a partial and timely payment of the contributions due for September 2017. This left a shortfall of $12,394.72. They further explained that the amount they recovered for September 2017 was applied back to the earliest possible delinquency under the Trust Funds' procedures, which left an amount of $122,509.74 in unpaid contributions for September 2017. Plaintiffs conceded in the supplemental brief that the original calculation for the interest due was incorrect and it should have been based on the $12,394.72 shortfall. Thus, Plaintiffs adopted the Court's interest calculation of $110.11, which represents interest for the delinquency period of one month and two days (e.g., October 25, 2017 to November 27, 2017) as permitted under the Bargaining Agreements.

With the supplemental brief, Plaintiffs have filed three declarations establishing entitlement to these amounts and explaining how they were calculated. See Brown Decl., ¶ 20; Stafford Decl., ¶ 29; Stafford Supp. Decl., ¶ 5. Accordingly, Plaintiffs have supported default judgment for the unpaid contributions of $244,493.62, liquidated damages of $26,875.72, and interest in the amount of $176.95.

b. **Late-Paid Contributions for 8/13, 5/14, 8/14, 10/14-11/14, 1/15-2/15, 4/15-3/16, 5/16-7/16, and 12/16-8/17 ($412,383.02)**

Plaintiffs also seek liquidated damages and interest on contributions that Defendants paid late for the months of August 2013, May 2014, August 2014, October and November 2014, January and February 2015, April 2015 through March 2016, May 2016 through July 2016, and

December 2016 through August 2017.  Pursuant to the terms of the Bargaining Agreements and Trust Agreements, Plaintiffs seek ten percent liquidated damages for the months of August 2013, May 2014, August 2014, October and November 2014, January and February 2015, April through March 2016, May 2016, June 2016, July 2016, December 2016, January 2017, February 2017, and March 2017 because at least part of those delinquent contributions were paid before litigation was instituted.  See Stafford Decl., ¶ 30; Stafford Supp. Decl., ¶ 8(a)-(f).  They seek twenty percent liquidated damages on at least part of the delinquent contributions for July 2016 and January 2017 through August 2017 because those contributions were paid late after the lawsuit was filed.  See Stafford Decl., ¶ 30; Stafford Supp. Decl., ¶ 8(b), (d)-(k).

Plaintiffs' original motion was not entirely clear about whether they were seeking twenty percent liquidated damages on contributions that were paid late before the case was filed.  Thus, the Court had a concern that the liquidated damages they were seeking were in conflict with Idaho Plumbers, in which the Ninth Circuit did not permit twenty percent liquidated damages where Section 1132(g)(C) did not apply (i.e., where all of the unpaid contributions were paid late but before suit was filed).  See Idaho Plumbers, 875 F.2d at 215.  The Court asked Plaintiffs to address the applicability of Idaho Plumbers in their supplemental brief.  In their supplemental brief, Plaintiffs clarified that they are only seeking twenty percent liquidated damages for contributions that were unpaid at the time of filing the suit, and seeking ten percent liquidated damages for those contributions that were that were paid late before the lawsuit was filed.  This is proper under Idaho Plumbers.[3]

Plaintiffs have filed two declarations establishing entitlement to these amounts, as well as an additional declaration that specifically sets forth which portion of the late paid contributions are subject to 20% liquidated damages and which portion is subject to 10% liquidated damages.  See Brown Decl., ¶ 20; Stafford Decl., ¶ 29; Supp. Stafford Decl. ¶ 8(a)-(m).  With reference to the updated liquidated damages figures in the supplemental brief and the interest figures in the

---

[3] Plaintiffs argue that they are also entitled to their liquidated damages request under a contract theory, as discussed in Idaho Plumbers, if they are not entitled to the liquidated damages under the statute.  The Court need not address this argument because it concludes that the liquidated damages sought are permitted under ERISA.

original motion, Plaintiffs have supported damages for these months in the amount of $368,007.94 for liquidated damages and $44,375.08 for interest, for a total of $412,383.02.

### c.       Audit of Contributions for 1/15-8/16 ($204,113.09)

Section 12.01.04 of the Bargaining Agreements is entitled "Examination of Records" and provides:

> The Union or the Trust Funds, or their agents or accounts may require the Individual Employer to submit to them for examination, any information relevant to the administration of the Trust Funds, to confirm the Individual Employer's reporting compliance, and the Individual Employer must submit such information pursuant to the terms of the Trust Agreements incorporated herein.  If more than minor underpayments are found due on audit, the Individual Employer shall reimburse the Trust Funds, upon demand of the Trust Funds, the costs of said examination in addition to any other obligation it may have hereunder.  Minor underpayments shall be defined as 10% of the proper contributions for the period tested.

Stafford Decl., ¶ 16; Williams Decl., Ex. B, Sec. 12.01.04; Ex. D, Sec. 12.01.04; Ex. E, Sec. 12.01.04.  In addition to authorizing an audit of a contributing employer's records, the Bargaining Agreements also provide for the reimbursement of audit fees.  Id.

The Trust Agreements also provide for audits of signatory employers.  For example, Section 6 of the Trust Agreement for the Pension Trust Fund for Operating Engineers provides:

> The Board can require the Employer . . . to submit to it any information, data, report, or documents reasonably relevant to and suitable for the purposes of such administration . . . Reasonable cause appearing therefore upon notice in writing from the Board, a Contributing Employer must permit a certified public accountant appointed by the Board to enter upon the premises of such employer during business hours, at all reasonable time or times, and to examine and copy such books, records, papers, or reports of such Contributing Employer as may be necessary to determine whether such Contributing Employer is making full and prompt payment of all sums required to be paid by him or it to this Fund.

Stafford Decl. ¶ 17; Williams Decl., ¶ 17, Ex. G.

Plaintiffs' auditors, Hemming Morse, LLP ("Hemming") conducted a payroll inspection of Tucker Engineering's records for the period of January 1, 2015 through August 31, 2016.  A report of Hemming's findings was finalized on or about January 11, 2017 and a copy of that report was submitted to Tucker Engineering Inc. for review on March 20, 2017.  Stafford Decl., ¶ 19; Williams Decl., ¶ 3.  Hemming subsequently prepared an updated report on November 8, 2017 to

United States District Court
Northern District of California

account for updated interest calculations.  Williams Decl., ¶ 4.

Hemmings determined that contributions in the total amount of $171,945.77 were under-reported for work performed during this period.  Williams Decl., ¶ 5.  It calculated that interest owed on the under-reported contributions through November 8, 2017 was $33,380.24 at a rate of 10% per annum.  Id.  Liquidated damages were assessed at $17,194.58, or a rate of 10%.  Id.  Hemmings also found that Defendants over-reported contributions during the testing period in the amount of $36,450.05.  Id.  The total inspections costs for the audit were $15,693.25.  Id.  Assuming a deduction for the over-reported contributions, Hemmings determined that Tucker Engineering owes $201,763.79 to the Trust Funds for this testing period.  Williams Decl., ¶ 6.

The amount of required contributions and the rates for liquidated damages and interest on delinquent contributions are set forth in the Bargaining and Trust Agreements, to which Defendants are bound.  The contributions claimed in Plaintiffs' motion were found as a result of an audit of Defendants' payroll records, which revealed the number of hours worked by Defendants' employees during the testing period that Defendants failed to report to Plaintiffs as required.  The interest owed on Defendants' unpaid contributions was calculated in accordance with the governing agreements; however, the liquidated damages were under-calculated by Hemmings.  It appears that Hemmings only applied ten percent liquidated damages when twenty percentage liquidated damages are warranted under the CBA and ERISA.  Stafford Decl., ¶ 31.  The Court has reviewed the audit reports and supporting documents that Plaintiffs submitted with their motion (see Williams Decl., ¶¶ 3-4, Ex. A & B), and concludes that they are sufficient to show that the damages sought are appropriate.

Therefore, Plaintiffs have demonstrated entitlement for amounts uncovered in the audit in the amount of $171,945.77 for unpaid contributions, $33,380.24 for interest, and $34,389.15 for liquidated damages.  They are also entitled to an additional $847.98 in interest to account for the time between November 9 and November 27, 2017 between the updated audit report and the motion for default judgment.  Stafford Decl., ¶ 31.  These amounts must be reduced, however, by the $36,450.05 in over-reported contributions that Defendants made during this time period.  Williams Decl., ¶ 5.  That leaves a total amount of supported damages in the amount of

15

$204,113.09 for the test period.

The Bargaining Agreements also provide that "[i]f more than minor underpayments are found due on audit, the Individual Employer shall reimburse the Trust Funds, upon demand of the Trust Funds, the costs of said examination in addition to any other obligation it may have hereunder.  Minor underpayments shall be defined as 10% of the proper contributions for the period tested."  Stafford Decl., ¶ 16; Williams Decl., Ex. B, Sec. 12.01.04; Ex. D, Sec. 12.01.04; Ex. E, Sec. 12.01.04.  In their supplemental brief, Plaintiffs confirmed that the underpayments did not meet this "more than minor" threshold, and, therefore, they are not entitled to recover the $15,693.25 in audit costs.

### 2.    Attorneys' Fees ($58,259.90)

Plaintiffs also seek attorneys' fees in the amount of $58,259.50.  An award of fees is mandatory because contributions are unpaid, and the plan provides for reasonable fees and costs.  See Northwest Administrators, 104 F.3d at 257.  To determine a reasonable fee award, federal courts use the lodestar method.  Grove v. Wells Fargo Financial Cal., Inc., 606 F.3d 577, 582 (9th Cir. 2010).  The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Id.

### a.    Rates

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008).  The relevant community is "the forum in which the district court sits," which is the Northern District of California.  Camacho, 523 F.3d at 979.  The party requesting fees must produce satisfactory evidence that the rates are in line with community rates.  See Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984).

Here, Plaintiffs' counsels' rates in this action are $235 per hour for a shareholder attorney, $230 per hour for associate attorneys, and $135 per hour for a paralegal.  Stafford Decl. ¶¶ 37-40.  The Ninth Circuit has found that rates between $375 and $400 were in line with rates charged by ERISA counsel in 2007.  See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 947 (9th Cir.

16

2007).  Other courts have approved hourly rates for paralegals that are in line with the $135/hour sought here.  See Echague v. Metro. Life Ins. Co., 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014) (approving $150/hour for paralegal in ERISA case); Oster v. Std. Ins. Co., 768 F. Supp. 2d 1026, 1034 (N.D. Cal. 2011) (same).  Ms. Stafford, the shareholder attorney on the case, has over a decade of experience specializing in ERISA litigation matters, including the collection of delinquent employer contributions.  Stafford Decl. ¶ 37.  Accordingly, Plaintiffs' counsels' rates are reasonable.

### b.    Hours

Reasonable hours expended on a case are hours that are not "excessive, redundant, or otherwise unnecessary."  McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir.2009).  The party requesting fees must provide detailed records documenting the tasks completed and the time spent.  See McCown, 565 F.3d at 1102; Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945–46 (9th Cir. 2007).

In their request for attorneys' fees, Plaintiffs seek payment for 276.6 hours[4] (83.5 hours by Ms. Stafford, 122.7 hours by Mr. Winchester, 9.6 hours by Mr. Minser, and 60.8 hours by Ms. Rutkowski).  Stafford Decl. ¶¶ 41-44.  At first blush, this seems like a slightly excessive number of hours to bill in support of a motion for default judgment, but the declaration that was filed with the motion documents the extensive work that Plaintiffs' counsel have completed through and including their motion for default judgment.  This work was considerable and included preparing demand letters, meeting with Defendants about the audit and contributions owed, communicating with general contractors about payments for contributions owed, preparing mechanics' liens, preparing the complaints, reviewing payroll documentation, and more to collect Defendants' delinquent contributions.  These hours do not appear to represent redundant or unnecessary hours, even if they are higher than one might see in the standard contribution case.  This case is more

---

[4] One section of the Stafford declaration in support of the request for attorneys' fees states that Plaintiffs' counsel billed a total of 315.7 hours on this case, but that is not compatible with the hours described in the declaration.  Because the remaining numbers included in the declaration add up to the $58,259.50 fees request in the motion and declaration, the Court concludes that this is likely a typographical error.  The motion itself correctly represents that Plaintiffs seek fees associated with 276.6 hours of legal work.

17

United States District Court
Northern District of California

complicated than other contribution cases the Court has reviewed and involved audit work and ongoing negotiations with Defendants in multiple attempts to resolve this case short of litigation. Accordingly, the hours documented are reasonable.

### 3.   Costs ($7,720.21)

Finally, Plaintiffs seek to recover $7,720.21 in costs. Plaintiffs are entitled to reasonable costs under both the ERISA statute and the Bargaining and Trust Agreements. See 29 U.S.C. § 1132(g)(2)(D). This amount is comprised of the filing fee for the Complaint, messenger services to the Court for the filing of documents, messenger services for the recording of mechanics' liens and releases of mechanics' liens, service of the summons and Complaint and the amended summons and Amended Complaint, a private investigators' financial investigation, and legal research fees. Stafford Decl. ¶ 47. These costs are reasonable in light of the effort Plaintiffs have expended to resolve this case.

## V.   CONCLUSION

For the reasons discussed above, the Court recommends granting Plaintiffs' motion for default judgment, awarding $888,042.80 in damages and $65,979.71 in attorneys' fees and costs.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: January 26, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California

18